

FILED
Apr 14, 2026
02:22 PM(ET)
TENNESSEE COURT OF
WORKERS' COMPENSATION
CLAIMS



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT NASHVILLE

| | |
|---|---|
| JOLICIA S. RHODES,<br>　　　　Employee,<br>v.<br>ALLSTATE INSURANCE<br>COMPANY,<br>　　　　Employer,<br>and<br>ARCH INDEMNITY INSURANCE<br>COMPANY,<br>　　　　Carrier. | Docket No. 2025-60-3095<br><br><br>State File No. 17421-2025<br><br><br>Judge Lisa A. Lowe |

## COMPENSATION ORDER

Ms. Rhodes suffered an alleged mental injury while working. Allstate denied the claim. The issue is whether Ms. Rhodes sustained a mental injury as defined by Tennessee Code Annotated section 50-6-102(15) (2025). For the reasons below, the Court concludes she did not sustain a mental injury as defined, denies her claim, and dismisses the case.

### Claim History

Ms. Rhodes worked as a total loss claim representative for Allstate.

In 2022, her workload increased. She asserted that Allstate promised a promotion and pay increase but did not implement it immediately. Later, Allstate retroactively changed her title and pay. She felt this created confusion and stress and contributed to her mental-health decline.

Because Ms. Rhodes suffers from major depressive disorder, post-traumatic stress syndrome, ADHD, and anxiety, she submitted a reasonable accommodation request form. She asked for a modified workload, schedule flexibility, intermittent

1

leave, and a workload adjustment after absences. Allstate did not accommodate the request, and she believes her supervisor harassed her and made hostile remarks. Ms. Rhodes testified that her repeated attempts to get Allstate to accommodate her restrictions and its denial to do so caused her stress and frustration.

In early March 2024, Ms. Rhodes received a "first and final" warning. She testified that she disproved the allegation with IT records, call logs, and emails; however, the allegation caused her extreme stress.

Later that month, Ms. Rhodes attended a virtual meeting with Regional Manager Alex Koziol and Supervisor Demi Risso, which she thought was to discuss her accommodation request, communications, and workload. She said Mr. Koziol and Ms. Risso treated it as a normal meeting and did not mention an accommodation. She testified that they knew she was vulnerable, but they did not care about her mental health and dismissed her conditions.

As a result, Ms. Rhodes had a breakdown, which included crying, panic attacks, anxiety, reduced cognitive function, and difficulty sleeping. She testified that the meeting completely changed her because she lost interest in social activities and lost trust in herself and others. She was placed on short-term disability in April 2024 but began a new role with Allstate in August 2025.

Ms. Rhodes acknowledged that during the meeting, no one yelled at or threatened her, no profanity or discriminatory slurs were used, she was not fired, and corrective action was not discussed.

Ms. Rhodes's partner, Tiffany Smith, testified that she overheard some of Ms. Rhodes's meetings regarding an accommodation and saw how frustrating those were for Ms. Rhodes. She also testified that Ms. Rhodes was a completely different person after the meeting. Previously, Ms. Rhodes handled the majority of the household and child rearing responsibilities. However, after the meeting, Ms. Smith had to assume those responsibilities because Ms. Rhodes was unable.

Dr. Christopher Van Schenck evaluated Ms. Rhodes and diagnosed major depressive disorder, post-traumatic stress disorder, attention deficit hyperactive disorder, and severe anxiety. He found that her conditions were exacerbated after work events. Dr. Van Schenck recommended modified workload, schedule flexibility, intermittent leave, and workload adjustments after absences. Ms. Rhodes testified she also sought additional treatment with other mental-health providers.

Allstate denied Ms. Rhodes's claim in April 2025, stating the denial was based on further review of the claim, which appeared to be normal work stress.

In May 2024, she filed a formal grievance documenting the hostile treatment, declined accommodations, and FMLA violations. Ms. Rhodes said she has not received an outcome statement to the grievance.

Ultimately, Ms. Rhodes underwent an evaluation with Dr. Suja Raju in December 2025. Ms. Rhodes reported her symptom worsening coincided with repeated workplace stressors and unresolved employment-related conflicts. The parties deposed Dr. Raju. She testified that the March meeting caused a measurable escalation beyond baseline and work stressors were more likely than not a major contributing factor.

However, Dr. Raju also testified that the reason she assumed the meeting was unusually stressful was based solely on Ms. Rhodes's history, and no "fright" or "shock" occurred at the meeting. She agreed the meeting was subjectively rather than objectively stressful, but workplace feedback, performance discussions, and workload concerns are common job experiences. Other employees in the same meeting would not potentially feel the same way as Ms. Rhodes.

The Court granted Allstate's motion in limine regarding Dr. Raju's impairment rating because she testified that she did not use the AMA Guides, 6th Edition and had never seen the book before. Further, the rating was based on her personal judgment, and the impairment is not permanent.

Allstate asserted that Ms. Rhodes has an extensive history of psychological problems. It claimed that Ms. Rhodes's mental injury is the result of a gradual exacerbation and not a specific event. By Ms. Rhodes's own description, the March meeting was about workload, communication, and accommodation, which are routine aspects of her employment. Allstate contended that Ms. Rhodes made no allegations against Mr. Koziol and Ms. Risso of threats of violence, retaliation, intimidation, coercive conduct, or public humiliation rising to an extreme level. Rather, this was a routine workplace meeting.

## Findings of Fact and Conclusions of Law

At the conclusion of Ms. Rhodes's proof, Allstate moved for involuntary dismissal. An involuntary dismissal is rarely appropriate in a workers' compensation case because a reversal of the trial court's ruling results in additional

proceedings and undue delay.  *Cunningham v. Shelton Sec. Serv.*, 46 S.W.3d 131, 137-38 (Tenn. 2001).  The trial court should instead hear the entire case and make appropriate findings of fact, and alternative findings, when necessary, for appellate review.  *Id*.  Thus, the Court denies Allstate's motion for involuntary dismissal.

To obtain benefits, Ms. Rhodes must prove all elements of her claim by a preponderance of the evidence.  Tenn. Code Ann. § 50-6-239(c)(6).

Here, Ms. Rhodes claimed a mental injury related to her employment.  Section 50-6-102(15) defines mental injury as "a loss of mental faculties or a mental or behavioral disorder, arising primarily out of a compensable physical injury or an identifiable work-related event resulting in a *sudden or unusual stimulus*[.]" (Emphasis added).

Here, Ms. Rhodes suffered from various mental-health conditions and sought an accommodation from Allstate.  The Court acknowledges that the process leading up to her accommodations ultimately being granted was likely very frustrating.  The Court also accepts Ms. Rhodes's and Ms. Smith's testimony that Ms. Rhodes suffered a breakdown after the March meeting.  However, the test is whether the meeting resulted in a sudden or unusual stimulus.

The Tennessee Supreme Court has stated:

> The performance of any contract of employment . . . produces some degree of emotional stress.  Compensation, therefore, is available for neither emotional stress, anxiety, or worry of a general nature. nor mental injuries resulting from the accumulation of normal employment-related activities.  Rather, the stress must be extraordinary and unusual in comparison to the stress ordinarily experienced by an employee in the same type of duty.

*Saylor v. Lakeway Trucking, Inc.*, 181 S.W.3d 314, 320 (Tenn. 2005) (citations and quotations omitted).

Additionally, the trial court must use a "reasonable person" standard in determining whether the work-related event caused a sudden or unusual stimulus.  In other words, it is not sufficient for an employee to allege that the work-related event was "sudden or unusual" *to that employee*; instead, the employee must show that the work-related event would be deemed sudden or unusual by a reasonable employee in similar circumstances.  *Id*.  (Emphasis added).

4

Ms. Rhodes had preexisting mental conditions, and the March meeting may have caused *her* to have a "mental breakdown" as she alleged. However, she acknowledged that during the meeting no one yelled at her, threatened her harm, or used profanity or discriminatory slurs. She additionally agreed she was not fired and no corrective action was discussed. Further, Dr. Raju testified that no shock or fright occurred during the meeting, which was subjectively not objectively stressful.

So, the Court finds Ms. Rhodes has not shown by a preponderance of the evidence that the work event would be deemed sudden or unusual by a reasonable employee in similar circumstances.

**IT IS, THEREFORE, ORDERED** as follows:

1. Ms. Rhodes's claim is denied, and her case is dismissed with prejudice to its refiling.

2. Allstate shall pay the $150.00 filing fee within five business days of entry of this order, for which execution may issue if necessary.

3. Allstate shall file a Statistical Data Form (SD-2) within ten business days of this order becoming final.

4. Unless appealed, this order shall become final 30 days after entry.

**ENTERED April 13, 2026.**

_Lisa A. Lowe_

**JUDGE LISA A. LOWE**
**Court of Workers' Compensation Claims**

**APPENDIX**

**Exhibits:**

1. Affidavit of Jolicia Rhodes
2. Ms. Rhodes Chronological Timeline of Events
3. Formal Grievance Letter, May 28. 2024
4. Sedgwick Claim Documents
5. Allstate Leave and Disability Unit Documentation
6. Job Search History Journal
7. State of Tennessee Appeals Tribunal Decision of Hearing Authority
8. Medical Records of Dr. Christopher Van Schenck
9. Medical Letters of Charlie Health
10. First Report of Work Injury
11. Notice of Denial
12. Employee's Discovery Responses
13. Dr. Raju's Deposition Transcript
14. 2022 Performance Evaluation

Marked for identification purposes only:

14. Emails re: Job Experience
15. Emails re: Laptop Request
16. Email re: Workplace Assistance
17. Email re: Accommodation Follow-up
18. Emails re: Reassignment
19. Emails between Alex Kezoil
20. Emails re: Claim #240084826
21. Emails re: Claim #4A2312BTC620001GI ROI
22. Form C-32 of Dr. Suja Raju, with attachments

**CERTIFICATE OF SERVICE**

I certify that a copy of this order was sent as shown on April 13, 2026.

| Name | Email | Service sent to: |
|---|---|---|
| Jolicia S. Rhodes, Employee | X | ████████████ |
| Allison P. King, Employer's Attorney | X | apking@mijs.com |

_____
*Penny Shrum*
**PENNY SHRUM, COURT CLERK**
**wc.courtclerk@tn.gov**



<u>Right to Appeal</u>:

If you disagree with the Court's Order, you may appeal to the Workers' Compensation Appeals Board. To do so, you must:

1. Complete the enclosed form entitled "Notice of Appeal" and file it with the Clerk of the Court of Workers' Compensation Claims before the expiration of the deadline.
   ➢ If the order being appealed is "expedited" (also called "interlocutory"), or if the order does not dispose of the case in its entirety, the notice of appeal *must* be filed *within seven (7) business days* of the date the order was filed.
   ➢ If the order being appealed is a "Compensation Order," or if it resolves all issues in the case, the notice of appeal *must* be filed *within thirty (30) calendar days* of the date the Compensation Order was filed.

   When filing the Notice of Appeal, you must serve a copy on the opposing party (or attorney, if represented).

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3. You are responsible for ensuring a complete record is presented on appeal. If no court reporter was present at the hearing, you may request from the Court Clerk the audio recording of the hearing for a $25.00 fee. If you choose to submit a transcript as part of your appeal, which the Appeals Board has emphasized is important for a meaningful review of the case, a licensed court reporter must prepare the transcript, and you must file it with the Court Clerk. The Court Clerk will prepare the record for submission to the Appeals Board, and you will receive notice once it has been submitted. For deadlines related to the filing of transcripts, statements of the evidence, and briefs on appeal, see the applicable rules on the Bureau's website at https://www.tn.gov/wcappealsboard. (Click the "Read Rules" button.)

4. After the Workers' Compensation Judge approves the record and the Court Clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties.

   **If neither party timely files an appeal with the Appeals Board, the Court Order becomes enforceable. See Tenn. Code Ann. § 50-6-239(d)(3) (expedited/interlocutory orders) and Tenn. Code Ann. § 50-6-239(c)(7) (compensation orders).**

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



## NOTICE OF APPEAL
Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

Docket No.: _____

State File No.: _____

Date of Injury: _____

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____     ☐ Motion Order filed on _____

☐ Compensation Order filed on_____     ☐ Other Order filed on_____

issued by Judge _____.

## Statement of the Issues on Appeal
Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

_____

## Parties
**Appellant(s) (Requesting Party):** _____ ☐ Employer ☐ Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐ Employer ☐ Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

## CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 ____.

_____
*[Signature of appellant or attorney for appellant]*



**Tennessee Bureau of Workers' Compensation**
**220 French Landing Drive, I-B**
**Nashville, TN 37243-1002**
**800-332-2667**

### AFFIDAVIT OF INDIGENCY

I, _____, having been duly sworn according to law, make oath that because of my poverty, I am unable to bear the costs of this appeal and request that the filing fee to appeal be waived. The following facts support my poverty.

1. Full Name:_____    2. Address: _____

3. Telephone Number: _____    4. Date of Birth: _____

5. Names and Ages of All Dependents:

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

6. I am employed by: _____

My employer's address is: _____

My employer's phone number is: _____

7. My present monthly household income, after federal income and social security taxes are deducted, is:

$ _____

8. I receive or expect to receive money from the following sources:

| | | | |
|---|---|---|---|
| AFDC | $ _____ per month | beginning | _____ |
| SSI | $ _____ per month | beginning | _____ |
| Retirement | $ _____ per month | beginning | _____ |
| Disability | $ _____ per month | beginning | _____ |
| Unemployment | $ _____ per month | beginning | _____ |
| Worker's Comp. | $ _____ per month | beginning | _____ |
| Other | $ _____ per month | beginning | _____ |

9. My expenses are:

Rent/House Payment $ _____ per month    Medical/Dental  $ _____ per month

Groceries        $ _____ per month    Telephone      $ _____ per month

Electricity      $ _____ per month    School Supplies $ _____ per month

Water            $ _____ per month    Clothing       $ _____ per month

Gas              $ _____ per month    Child Care     $ _____ per month

Transportation   $ _____ per month    Child Support  $ _____ per month

Car              $_____ per month

Other            $ _____ per month (describe: _____ )

10. Assets:

Automobile            $ _____        (FMV) _____

Checking/Savings Acct. $ _____

House                 $ _____        (FMV) _____

Other                 $ _____        Describe: _____

11. My debts are:

Amount Owed                    To Whom

_____            _____

_____            _____

_____            _____

_____            _____

**I hereby declare under the penalty of perjury that the foregoing answers are true, correct, and complete and that I am financially unable to pay the costs of this appeal.**

_____
APPELLANT

Sworn and subscribed before me, a notary public, this

_____ day of _____, 20_____.

_____
NOTARY PUBLIC

My Commission Expires:_____

LB-1108 (REV 11/15)                                      RDA 11082